[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff R.A. Lalli Co., Inc. (Lalli) appeals a decision of the defendant Commission on Human Rights Opportunities (CHRO) ordering relief for Lalli's former employee, defendant Maurice Paul Thomas. For the reasons set forth below, the court finds in favor of the defendants.
The following facts are reflected in the record and not contested in this appeal. On February 28, 1995, Thomas filed a complaint with the CHRO averring that Lalli violated General Statutes § 46a-60(a)(1) and the federal age Discrimination in Employment Act of 1967 by terminating his employment because of his age. A copy of this complaint was served on Lalli in March 23, 1995. On May 9, 1995, the CHRO regional manager requested that a default enter against Lalli for failure to file an answer to the CT Page 2403 complaint. A copy of the request was sent to Lalli. On May 30, 1995, the CHRO sent notice to Lalli and Thomas that Thomas' complaint would be fully investigated based upon the results of the merit assessment process. On June 7, 1995, the CHRO executive director entered a default against Lalli. Pursuant to General Statutes § 46a-83(i) a public hearing was scheduled for July 19, 1995. Notices of the default and public hearing were sent to Lalli. General Statutes § 46a-83 (i) states:
 The executive director of the commission or his designee may enter an order of default against a respondent (1) who, after notice, fails to answer a complaint in accordance with subsection (a) of this section or within such extension of time as may have been granted or (2) who fails to answer interrogatories issued pursuant to subdivision (11) of section 46a-54 or fails to respond to a subpoena issued pursuant to subsection (h) of this section and subdivision (9) of section 46a-54, provided the executive director or his designee shall consider any timely filed objection or (3) who, after notice and without good cause, fails to attend a mandatory mediation session. Upon entry of an order of default, the executive director or his designee shall appoint a presiding officer to enter, after notice and hearing, an order eliminating the discriminatory practice complained of and making the complainant whole. The commission may petition the Superior Court for enforcement of any order for relief pursuant to section 46a-95.
On July 19, 1995, Lalli appeared through counsel and requested a continuance 1 which was granted. Efforts were made to settle the dispute without success. On October 25, 1995, Lalli filed a request to open the default order and a verified answer.[1] On December 4, 1995, the CHRO executive director denied the request to open. The hearing took place on December 6, 1995, and on April 22, 1996, the CHRO hearing officer rendered his opinion awarding Thomas back pay with interest and ordering Lalli to reimburse the commission for unemployment compensation paid to Thomas. This appeal followed.
Lalli raises two issues in this appeal. It claims that the denial of the request to open the default order was arbitrary and capricious, was an abuse of discretion and violated Lalli's due process rights. It also claims that the CHRO erred in its calculation of the back pay award.
The scope of the court's review of an agency's decision is very limited. Under General Statutes § 4-183 (j), "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . the court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, CT Page 2404 conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record."
Furthermore, "[j]udicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of discretion." Conn. Light Power Co.v. Dept. of Public Utility Control, 219 Conn. 51, 57-58 (1991). "Ultimately, `[t]he question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken.'" (Citations omitted) Miko v. Commission on Human Rights Opportunities, 220 Conn. 192, 201 (1991).
In arguing that the denial of the request to open the default order was in error, Lalli notes that, like the entry of the default under General Statutes § 46a-83 (i), this is a discretionary ruling. (Plaintiff's brief, p. 7). Discretionary rulings by agencies "`are to be accorded considerable weight by the courts.' State Medical Society v. Board ofExaminers in Podiatry, 208 Conn. 709, 717, 546 A.2d 830 (1988)." Board ofEducation v. State Employees Retirement, 210 Conn. 531, 540 (1989).
Lalli argues several grounds for finding error in the CHRO denial.[2]
Lalli's first argument emphasizes that public policy is served when disputes are resolved after a full adjudication on the merits rather than on procedural grounds. Second, Lalli argues that it has a good defense to Thomas's claims because there are no factual allegations to support the claim of age discrimination and the real reason for Thomas' discharge was insubordination. Third, Lalli claims that it failed to present its defense in a timely fashion through a mistake and/or excusable neglect. Fourth, according to Lalli, there would be no undue delay in the proceedings had the CHRO opened the default. Finally, Lalli claims that the failure to open the default and to provide reasons for the denial deprived it of due process. The court will not accept these grounds.
While public policy favors resolution of disputes on the merits, the legislature has also promulgated statutes providing for the efficient resolution of CHRO complaints which necessarily include sanctions for noncompliance. Lalli failed to comply with the procedures set up for a resolution on the merits; even after it appeared through counsel, it waited three months before filing a motion to open the default. The record reflects that there could indeed have been a delay in the proceedings had the CHRO opened the default when requested in late October 1995, some eight months after the filing of the complaint. That delay would prejudice Thomas in resolving his claim in an efficient manner and in light of the unsettled state of the law evolving under Anglesea Productions Inc. v.CT Page 2405Commission on Human Rights Opportunities, 236 Conn. 681 (1996), and subsequently Public Act § 96-241. Higgins v. Karp, 243 Conn. 495,508-09 (1998) (prejudice as a result of delay is relevant to determining whether to set aside default).
While Lalli may indeed have a good defense to the complaint, a "good defense" is only one of the factors to consider in deciding whether to open a default.
 "`[the] determination of whether to set aside [a] default is within the discretion of the trial court"'; Higgins v. Karp, supra, 239 Conn. 808; and will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of "mistake, accident, inadvertence, misfortune or other reasonable cause"; Munch v. Willametz, 156 Conn. 6, 10, 238 A.2d 424 (1968); factors such as "[t]he seriousness of the default. its duration. the reasons for it and the degree of contumacy involved"; E. Stephenson. Connecticut Civil Procedure (3d Ed. 1997) § 96(f). p. 288; but also, the totality of the circumstances. including whether the delay has caused prejudice to the nondefaulting party.
(Emphasis added.) Higgins v. Karp, 243 Conn. 495, 508. Further, the record does not contain sufficient evidence of mistake or excusable neglect to overturn the CHRO's discretionary ruling.
As to the due process claims, the CHRO did provide Lalli with prior notice of the default as well as its reasons for entering the default. Under the case cited by Lalli, Shawmut Bank v. Hoyt, Superior Court, judicial district of Hartford/New Britain at Hartford, Doc. No. 704651 (October 12, 1994), this was sufficient for due process. "[M]inimal due process standards would seen to require that before a party should be defaulted in such a manner the court should make a judicial finding that the defendants had failed to comply with a court order before the default enters." (Italics in original.) Id. While the plaintiff also argues that due process required an explanation of the denial of the request to open default, the court has not been persuaded by any authority that in an administrative proceeding such an articulation is required under due process. The CHRO did not violate Lalli's rights to due process.
For the reasons set forth above, the court will not disturb the discretionary ruling of the CHRO in denying the request to open default.
After the hearing, the hearing officer awarded back pay pursuant to General Statutes § 46a-86 (b) which provides in part that "interim CT Page 2406 earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled." Lalli claims that the hearing officer should have deducted from the back pay award amounts Thomas would have earned had he accepted a position offered to him one month after his discharge. The job Thomas turned down was as a machinist and paid $10.59 per hour, $4.31 less per hour than Thomas had been earning.
The hearing officer found,
 The respondent acknowledges that a complainant is under no duty to accept employment that is not substantially equivalent to the position from which he is discharged. Ford Motor Co. v. EEOC, 458 U.S. 219, 232
(1982); Shore v. Federal Express Corp. , 42 F.3d 373, 378 (6th Cir., 1984); Weaver v. Casa Gallardo. Inc., 922 F.2d 1515, 1527 (11th Cir., 1991). On the other hand, argues the respondent, this does not mean that he is free to pass up suitable alternate employment in each for the perfect job. Indeed the respondent cites case law to the effect that if a complainant is unable to find other employment at a comparable rate of pay it is appropriate for him to "lower his sights" and accept non-comparable employment. Weaver, 922 F.2d at 1527. Besides, the respondent adds, the complainant would have received raises at Bridgeport Machines.
 This argument has a superficial attractiveness. After all, a reduction of little more than four dollars per hour seems not very much. But justice demands deeper and broader view. If the complainant had taken the job at Bridgeport Machines, he would have lost $172.40 per week — a considerable sum!
 Furthermore, it is entirely speculative to say that the complainant would in time have received raises at Bridgeport Machines. There was no evidence introduced to show that Bridgeport Machines would have certainly given the complainant raises. The certainty was that if the complainant had accepted the position at Bridgeport Machines, he would have faced a pay cut of nearly two hundred dollars per week. In order to make complainant whole, the Commission must look at certainty rather than speculation.
 In addition, the complainant rejected the job only one month after he began his job search. If he had obstinately held out for top dollar after many months of searching, one could legitimately infer lack of due diligence. But after one month only, the complainant could reasonably have expected that finding an equivalent job was probable. CT Page 2407 Between May, 1995 and January 1996 the complainant obtained three different positions: one at $13.00 per hour; another at $15.00 per hour; and a final position at $15.00 although this one was eighty to eighty-five miles from his home. Tr. 26. Therefore, it is concluded that the complainant acted with due diligence in finding a job and that the respondent is not entitled to proration of the award by the amount of the Bridgeport Machines job.
These findings are supported by substantial evidence in the record and do not reflect incorrect conclusions of law. The court will not disturb the conclusion of the hearing officer that the Bridgeport machinist position was not substantially equivalent to that position from which Thomas was discharged and that Thomas acted diligently in finding a job.
The appeal is dismissed.
DiPENTIMA, J.